OSCAR E. LAPRE *vs.* FRANK M. KANE *et al.*, TOWN COUNCIL OF THE TOWN OF SMITHFIELD.

FEBRUARY 8, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a petition for *certiorari* to review the action of the town council of the town of Smithfield in refusing to designate certain premises in that town as a place for keeping swine to be fed on swill, offal or other decaying substances brought from any other town. Pursuant to our citation to show cause why the writ should not issue, the respondents appeared by counsel and produced a certified record of the hearing before the town council and its action. These, by agreement between counsel, were filed as the certified record to be treated as if the writ had issued and they had been returned pursuant thereto. Accordingly, after certain affidavits and counter affidavits were filed, the cause was heard on its merits.

The petitioner, under general laws 1938, chapter 601, §13, filed his application for the designation by the town council, for the keeping of swine to be fed on swill, offal, or other decaying substances brought from any town other than the town of Smithfield, of certain premises thereinafter described. The land in question was not owned but was occupied by petitioner. It consisted of three parcels, one lying between Lydia Ann Road and Limerock Road, and the other two on the southerly side of Limerock Road. Together they comprised about three hundred acres and were situated in a farming or rural section close to the easterly boundary line of the town of Smithfield and near the town of Lincoln.

After due notice a hearing upon this application was held by the town council at which the petitioner was not present but was represented by counsel. Other persons, who were neighbors or interested residents in the town, appeared and were heard in opposition to the granting of such application. The town council inspected the premises and reported in the record certain observations of conditions which they found there. After considering these and all the facts brought out at the hearing, they rendered a decision refusing to designate such premises for the purposes set forth in the application. That decision and the reasons therefor were given in writing to the petitioner and will be set forth later in this opinion.

The petitioner contends, in substance, that the respondents were biased and prejudiced against him; that for various reasons he had not obtained a full, fair and impartial hearing before them; that their decision refusing to designate the premises described in the application as a place where swine might be kept to be fed on swill brought from any other town was without substantial evidence to support it and was arbitrary and unreasonable; and, finally, that the record which was returned by respondents was erroneous and incomplete in that the stenographic report of the evidence failed to include a full account of all that was said at the hearing. The respondents deny all of these allegations and argue that the record completely refutes the petitioner's claims.

It is not our purpose to discuss in detail the merits of all these contentions. We have examined them and find that the record before us is substantially a complete and accurate report of the hearing before the town council and of their action; that it does not show that the respondents were biased and prejudiced against the petitioner; that opportunity to examine persons who objected to the granting of the application was not denied to petitioner's counsel; that he was given opportunity to be heard on all questions; and that, considering the nature of such proceedings, the hearing, on the whole, was fair and impartial.

The petitioner's chief contention is that the respondents' action in denying his application was arbitrary in that it was in excess of its jurisdiction under §13 of the statute. As we understand petitioner's brief and argument in support of this contention, he claims substantially that: (1) The town council had no authority under §13 to deny the petitioner's application for designation of these premises as a place where swine could be kept to be fed as described in that section, "unless there is affirmative evidence that the public health, morals, or the general welfare are adversely affected", and that there was no such evidence before the town council to support its decision; (2) that in any event the decision was

arbitrary and unreasonable in that it (a) ignored physical and geographical facts; (b) was discriminatory; (c) amounted to confiscation; and (d) bore no relation whatever to the public health, safety or general welfare but was based solely on complaints by certain objectors concerning conditions and injuries which amounted merely to private nuisances.

The answer to the first of these contentions involves to some extent the construction to be given to G. L. 1938, chap. 601, §13, under which the petitioner filed his application. That section of the statute reads: "No swine shall be kept in any town, to be fed on swill, offal or other decaying substances, brought from any other town, except in such place therein as shall be designated by the town council thereof."

This section was not a part of the law as it appeared in General Statutes 1872, chap. 72. The statute at that time, however, contained a section which now appears as §19, chap. 601, G. L. 1938. It provided: "The town councils of the several towns may make such rules and regulations as they shall deem necessary, to regulate and control the construction and location of all places for keeping swine . . . and may provide for the summary removal or reconstruction of all such as shall be by them deemed prejudicial to the public health . . . ." Notwithstanding that such comprehensive powers were thereby vested at that time in the town councils, the legislature nevertheless thereafter enacted P. L. 1879, chap. 750, thereby adding the two sections which now appear as §§ 13 and 14 of chap. 601, G. L. 1938. Section 14 merely provides a penalty for violation of §13, which is in question here.

According to petitioner's construction of the above-quoted §13, it vested no authority in the town council to refuse to designate such a place for keeping swine to be fed on swill, *etc.*, brought from any other town, unless there was evidence that its granting would affect adversely the public health, safety or general welfare.

On the other hand, the respondents chiefly contend that

the legislature by §13 made the keeping in any town of swine to be fed on swill, *etc.*, brought from any other town an unlawful business, unless previously licensed by the town council; that it thereby vested in the town council a broad administrative discretion to grant or deny such a license; and that the instant case therefore is governed by principles set forth in cases referred to in *Thayer Amusement Corp.* v. *Moulton,* 63 R. I. 182, 189.

In our opinion, the instant case may be decided without necessarily adopting the construction of §13 advocated by the respondents. Assuming, without deciding, that this section submits only to the construction advocated by the petitioner, namely, that the town council thereby was required to designate such land as a place for keeping swine to be fed on swill, *etc.*, brought from any other town, unless there was evidence that such designation would affect adversely the public health, safety or general welfare, we nevertheless cannot agree with his further contention that this record contains no evidence to the effect that the granting of such application would affect adversely the public health, safety or general welfare.

It is well established that upon *certiorari* we examine the evidence not to pass upon its weight but merely to determine whether there was any legal evidence before the respondent body or tribunal to support its decision, or whether such decision was made arbitrarily without any legal evidence before it. *Portuguese-American Independent Social Club* v. *Costello,* 63 R. I. 4. Applying this law to the instant case we find in the record evidence that the location and contour of the land itself was such that surface drainage, especially after rain or snow, was bound to drain and seep into springs and a stream of water located on nearby land of another owner; that filth and pollution from use of petitioner's land as a piggery drained and seeped into such water supplies and actually polluted them; that such pollution carried all the way down this stream and flowed into Georgiaville Pond, about a mile and a half away, where the town was "fixing"

public bathing beaches for its citizens. Several witnesses testified to these facts and their evidence was uncontradicted.

It also appeared that swill was being transported by petitioner from another town and was being dumped on this land, to be fed to swine; and that the land became and remained littered with large accumulations of uneaten, undisposed-of garbage and decaying substances, thus causing not only extremely foul odors but also "affording a breeding place for flies and other insects", which notoriously spread disease and affect the public health. Reports in the record show that these conditions were observed by the town council upon different inspections and were considered by them to be "a health menace". There was also evidence that, in the course of transportation by petitioner's trucks, garbage fell in the highway and was allowed to remain and to decay there, and that unrestrained movements of large numbers of pigs along the highway for a great distance beyond the land itself caused a traffic hazard to automobilists thereon.

In the face of such evidence, some of which was referred to in the town council's report of its inspections and in its written decision hereinafter set forth, we cannot agree with the petitioner's contention that there was no substantial legal evidence to support a conclusion that the granting of his application would adversely affect the public health, safety or general welfare.

It is true that the record also contains various complaints by certain of the individuals who objected to the granting of the application, and that these were based upon substantial special injuries to them which would be enough to constitute private nuisances. But it does not follow that the town council's decision and action were based solely upon complaints of such private nuisances. In our opinion, the decision does not say so expressly or impliedly. The petitioner apparently overlooks the fact that certain of the conditions testified to as resulting from the location, contour and use of this land, and as found by the town council, may well cause injury to the public generally and thereby constitute a public

nuisance, notwithstanding that such conditions may also constitute private nuisances to those individuals who may sustain special injury thereby.

Considering all the evidence, none of which was contradicted or qualified, and without attempting to pass upon its weight, we cannot say that the town council's decision and action were entirely unsupported by any legal evidence, or that its decision was based solely upon complaints by certain individual objectors amounting merely to asserted private nuisances.

The petitioner further argues that the town council in making its decision wholly ignored the physical and geographical facts connected with this location, and that its decision was discriminatory, confiscatory, and bore no reasonable relation to the protection of the public health, safety or general welfare. From what has been said about the existence of evidence relating to the location and contour of this land and the drainage of pollution therefrom and the effect thereof, as verified by reports of inspections by the town council, we think it cannot be said that the respondents wholly ignored the physical or geographical facts. In our opinion, the petitioner's argument in this respect is addressed to the weight which he would have us give to certain evidence rather than to the lack of any legal evidence to support the decision.

We need not be concerned with petitioner's contention that the town council's action was discriminatory because, in argument before us, his counsel conceded that he knew of no other location in the town that had been designated under §13 for this purpose; and there is a showing by respondents that no such designation had been made in the town.

As to petitioner's contention that the decision deprives him of all beneficial use of the land and therefore amounts to confiscation, he appears to argue that the land was suitable *only* for the purpose described in his application. Assuming that the petitioner as an occupant and not an owner is qualified to make such an argument as to confisca-

tion, we find, in any event, that there was no evidence before the town council which would support a conclusion that this land was wholly unsuited for any other purpose. There is evidence fairly indicating that it could be used, as other land in that locality, for general farming or purposes other than the one described in this application.

The petitioner finally renews his argument that the decision of the town council was unreasonable in that it bore no relation whatever to the public health, safety or general welfare, but was premised entirely upon the complaints by individual objectors of conditions amounting merely to private nuisances as to them. In our opinion, the answer to this contention is found in an examination of the evidence and the town council's decision, which reads as follows:

"The application of Oscar E. Lapre for designation by the Town Council of certain premises described therein for the keeping of swine to be fed on swill, offal and other decaying substances brought from any town other than the Town of Smithfield, which application was received by the Town Council on August 3, 1943 and on which application a hearing was held on August 19, 1943 after due notice to the applicant by the Town Council at which time on the conclusion of said hearing the Town Council voted to take the matter under advisement and report thereon at this meeting is again taken up and extensively considered. Councilman William J. Campbell reports that subsequent to visiting the premises with other members of the Town Council on August 18, 1943, he had inspected the premises on a number of occasions and found that the piles of swill observed by the Council on that date had not been removed, and that the other conditions noted by the Council continued to exist. After discussion by all members of the Council present, and it appearing from the testimony of the witnesses who testified at the hearing of August 19, 1943 and from personal inspection of the premises by the members of the Town Council on August 18, 1943 and subsequently, that the place as conducted by Mr. Lapre constituted a health menace, the premises being littered with swill, the uneaten part

of which is permitted to remain and decay resulting in an extremely foul odor and affording a breeding place for flies and other insects, and that no sufficient provision has been made for the adequate housing of the pigs or the installation of proper feeding troughs and other equipment, and that the pigs were not confined to the premises but were permitted to roam upon the highways and neighboring property of others, and by reason of the absence of the petitioner from the hearing, the Council being unable to examine or inquire of him concerning the matter, the matter was then voted upon by ballot as to whether or not the premises in question should be designated for such use. The result of the vote: opposed to said designation, four (4) votes; in favor of said designation, zero (0) votes; and the said application of Oscar E. Lapre is not granted."

It will be noted that the town council in its decision made express findings concerning the existence of certain conditions and these were considered and found by it to constitute "a health menace". These findings, and the evidence in the record which supported them, appear to us to be directly related to matters concerning the health of the public generally within a wide area. In our opinion, a consideration of the decision and the evidence does not justify the petitioner's contention that there was no reasonable connection between the denial of his application and the exercise of police powers in protecting the public health, safety or general welfare.

The prayer of the petition for relief is denied.

CONDON, J., dissenting. A construction of §13 is fundamental to a proper decision in this proceeding. Under that section a town council is given the power to decide where swine may be kept in the town to be fed on swill brought from any other town. Until the council designates such a place the section prohibits the keeping of swine in such manner. But this power cannot be arbitrarily exercised. The town council cannot, as it pleases in its own unlimited discretion, refuse to designate a place properly adapted to the carrying on of such a lawful agricultural pursuit. The power

conferred upon it by § 13 is not the broad licensing authority exercised over otherwise unlawful businesses, such as the manufacture and sale of intoxicating liquor, poolrooms, theatres, shows, exhibitions and the like. There the licensing authority may grant or refuse a license in its discretion. *Thayer Amusement Corp.* v. *Moulton,* 63 R. I. 182. Here the power is over a lawful business which cannot be prohibited unless such prohibition is necessary to protect the public health or welfare. In other words, the validity of §13, and of the exercise of authority under it, rests upon the police power.

Whether or not the conduct of a lawful business may be declared to be a menace to public health, or otherwise inimical to the public welfare, depends upon the nature and character of the place where it is to be conducted. Is it to be located in a *community* where a danger to the public health may be reasonably assumed from the nature of the business, or is it to be located beyond the borders of any *community* and therefore not so placed as to menace the public health? The determination of these questions is a judicial function which is to be exercised in the first instance by the town council, subject to review by this court for errors of law. If there is any evidence to support the findings of the town council they will not be disturbed on such review.

In the instant case there is no evidence that petitioner's premises are situated in or very near to any community. All the evidence is to the contrary, namely, that they are in the open country. In fact, there are but two dwellings in the general neighborhood of petitioner's premises, only one of which is reasonably near thereto. Within a radius of a mile in all directions there are only a very few widely scattered dwellings. The area is largely wild and uncultivated. The town of Smithfield as a whole is thinly populated except in the mill villages which occupy but a small part of its total area. According to a map of the town which is in evidence petitioner's premises are about a mile and a half distant from the nearest mill village.

Unless the town council could find on that evidence that it was dangerous to the public health to allow the petitioner to keep swine to be fed on swill brought from any other town, it was its duty to designate his premises as a place on which swine could be kept in such manner, subject to any reasonable restrictions which it deemed necessary to impose. Under §19 of chap. 601 the town council is expressly empowered "to regulate and control the construction and location of *all places* for keeping swine". (italics mine)

The town council either disregarded its duty or it misconceived its power under §13. Instead of determining whether the petitioner's premises were situated in a *community* and were thus unsuitable, from the viewpoint of public health, for the use he intended to make of them, it decided the question before it on evidence of the *manner* in which he had been keeping swine on his premises and of the annoyance which he had thereby caused to two of his neighbors. In other words, it decided his application, not on any inherent unsuitability of the premises for the intended use on the ground of a menace to public health, but because it found that the petitioner was not a proper person to be allowed to keep swine there to be fed on swill brought from any other town.

The summary of the evidence in the majority opinion shows quite clearly that the town council had before it practically no evidence but that of the *manner* in which petitioner kept swine on his premises. While such evidence may have been relevant in a suit to enjoin a private nuisance, it had no relevancy in the instant proceeding where the sole question was whether the petitioner's premises could be designated, without danger to the health of the community, as a place where swine may be kept to be fed on swill brought from any other town.

The abuses which were disclosed by such evidence do not inhere in the keeping of swine to be fed on swill. Nor would they be necessarily incident to keeping swine on the premises in question and feeding them on swill brought from any other town. By exercising its regulatory powers under §19

the town council could prevent such abuses from arising. Of course, offensive odors that may come from the raising of hogs on swill cannot be wholly banished, although they may be minimized. But such odors, like those from the barnyard and the cattle shed, are the normal, natural incidents of life in an agricultural area. The purpose of §13 is certainly not to enable town councils to rid the countryside of such odors. Its only purpose is to enable town councils to safeguard public health by preventing the establishment in a *community* of swine keeping in the manner mentioned in §13.

The total absence of any evidence from which the town council could reasonably find that petitioner's premises were situated in an ordinary community deprives its decision of any validity. If those premises in the sparsely settled and, for the most part, unsettled open country are not a proper place for the keeping of swine under §13, where in the town of Smithfield would the town council allow swine to be so kept? Merely to pose that question is to show the arbitrary and capricious character of its decision.

The town council should have granted petitioner's application subject to compliance with such reasonable restrictions as it deemed proper. Its denial of the application should, therefore, be quashed.

*William R. Goldberg,* for petitioner.

*Tillinghast, Collins & Tanner, George C. Davis, Joseph S. Wholey,* Town Solicitor, for respondents.